OPINION
{¶ 1} Plaintiff-Appellant, Michael M. Mangas, appeals the judgment of the Henry County Court of Common Pleas granting Defendant-Appellees', Scott J. Bockelman and German Mutual Insurance Company (hereinafter jointly referred to as "Appellees"), motion for summary judgment. On appeal, Mangas argues that the trial court erred in granting summary judgment to Appellees because there is a genuine issue of material fact as to whether Bockelman's actions were reckless. Finding that there is no genuine issue of material fact, we affirm the judgment of the trial court.
 {¶ 2} The following facts are undisputed. In February 2005, Bockelman, a paid volunteer firefighter for the city of Napoleon, attempted to pass Mangas' vehicle while responding to an emergency call and struck its rear, injuring Mangas and damaging both vehicles.
 {¶ 3} In November 2005, Mangas filed a complaint against Appellees alleging that Bockelman negligently operated his vehicle, injuring Mangas and damaging his vehicle. *Page 3 
 {¶ 4} In April 2006, Appellees filed a counterclaim against Mangas alleging that he negligently operated his vehicle, damaging Bockelman's vehicle.
 {¶ 5} In May 2007, Mangas was deposed and stated that, on February 9, 2005, he was travelling eastbound on State Route 110 when he heard a siren, looked in the rearview mirror, and saw flashing lights; that he "immediately pulled over to the curb and stopped" (Mangas dep., p. 27); that he did not know approximately how far behind him the emergency vehicle was when he noticed it and stopped; and, that he pulled over to the curb far enough that his right wheels touched the curb.
 {¶ 6} Additionally, Bockelman was deposed and stated that, on February 9, 2005, he was a paid volunteer firefighter for the city of Napoleon; that fire department procedures advise emergency call responders to follow all traffic signals and not to travel more than fifteen m.p.h. over the speed limit; that he received an emergency call that morning; that he got into his truck and activated his emergency lights and siren; that approximately one inch of snow was on the road; and, that he travelled eastbound on State Route 110 at approximately fifteen to twenty-two m.p.h., although the posted speed limit was twenty-five m.p.h.
 {¶ 7} Bockelman continued that he encountered Mangas' vehicle, which was travelling slower than he was; that Mangas did not pull over to the side of the road or stop immediately; that he changed his siren to a different tone in an *Page 4 
attempt to notify Mangas of his presence; that, at some point, Mangas abruptly stopped; that he "attempted to veer into the westbound lane and in doing so at the turning point of the turn of [sic] my tire my vehicle started sliding" (Bockelman dep., p. 43); that he "made a very good attempt at trying to avoid the accident, unfortunately, [his] antilock brake system kicked in and [he] was * * * caught in the ice" (Bockelman dep., p. 69); that his vehicle slid due to ice and snow; and, that the upper portion of the passenger side of his vehicle impacted the back of Mangas' vehicle from the center portion to the back left corner.
 {¶ 8} Additionally, Appellees filed the February 2005 traffic crash report from the Napoleon Police Department in response to Mangas' request for production of documents. The traffic crash report provides that "[Bockelman] behind [Mangas] in emergency response (both lights and siren was [sic] activated). [Mangas] heard the siren and saw the lights in his rearview mirror. [Mangas] pulled to the right and stopped. [Bockelman] was unable to pass [Mangas], due to oncoming vehicles, slid on the ice and snow and rear ended [Mangas]." (February 2005 Traffic Crash Report, p. 3).
 {¶ 9} In June 2007, Mangas moved for summary judgment on Appellees' counterclaim, asserting that there were no material facts in dispute because Appellees presented no evidence that Mangas had negligently operated his vehicle. Subsequently, Appellees moved for summary judgment on Mangas' *Page 5 
complaint, asserting that there were no material facts in dispute because Mangas presented no evidence that Bockelman had wantonly or recklessly operated his vehicle, which was the appropriate standard because Bockelman had immunity as emergency personnel of a political subdivision.
 {¶ 10} In September 2007, the trial court granted Mangas' motion for summary judgment, dismissing Appellees' counterclaim[1] on the basis that "Mangas did not violate any law, he did nothing to cause this accident and reasonable minds could not find him to be negligent." (September 2007 Judgment Entry, pp. 1-2). Contemporaneously, the trial court granted Appellees' motion for summary judgment, dismissing Mangas' complaint on the basis that "[no factual basis establishes] that [Bockelman] operated his vehicle in either a `wanton or reckless' manner [and Bockelman] is therefore entitled to absolute immunity as a matter of law." (September 2007 Judgment Entry, p. 2).
 {¶ 11} It is from this judgment that Mangas appeals,[2] presenting the following assignment of error for our review.
THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT BECAUSEREASONABLE MINDS CAN DIFFER AS TO WHETHER THE DEFENDANT ACTEDRECKLESSLY, THEREBY DIVESTING HIM OF IMMUNITY UNDER R.C. 2744.02. *Page 6 
 {¶ 12} In his sole assignment of error, Mangas contends that Bockelman was not immune from liability pursuant to R.C. 2744.02 if his actions were reckless and that reasonable minds could differ as to whether Bockelman's actions were reckless. Specifically, Mangas argues that he pulled all the way over to the curb so that Bockelman could safely pass him; that there was no oncoming traffic for at least three-quarters of a mile; that Bockelman was driving too fast for the icy and snowy conditions; that Bockelman's conduct amounted to recklessness which divested him of statutory immunity; and that Bockelman's reference to R.C. 4511.041 as support for his immunity was erroneous. We disagree that Bockelman's conduct amounted to recklessness divesting him of statutory immunity.
 {¶ 13} An appellate court reviews a summary judgment order de novo.Hillyer v. State Farm Mut. Auto. Ins. Co. (1999), 131 Ohio App.3d 172,175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distr. Co., 148 Ohio App.3d 596,2002-Ohio-3932, at ¶ 25, citing State ex rel. Cassels v. Dayton CitySchool Dist. Bd. of Ed., 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issues of material fact remain to be litigated; (2) construing the *Page 7 
evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party, and (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); Horton v. Harwick Chemical Corp., 73 Ohio St.3d 679, 686-687,1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356,358-59, 1992-Ohio-95.
 {¶ 14} The party moving for summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. State ex rel. Burnes v. Athens Cty.Clerk of Courts, 83 Ohio St.3d 523, 524, 1998-Ohio-3; see, also,Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 {¶ 15} R.C. 2744.02 governs political subdivision liability in civil actions and provides, in pertinent part:
 (B) * * * [A] political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the *Page 8 scope of their employment and authority. The following are full defenses to that liability:
 * * *
 (b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct.
R.C. 2744.02(B).
 {¶ 16} R.C. 2744.03(A)(6) further limits the immunity granted to an employee of political subdivisions:
 (6) In addition to any immunity or defense referred to in * * * this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 * * *
 (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]
 {¶ 17} Accordingly, immunity does not apply and liability may attach to an employee of a political subdivision where he operates his vehicle in a willful, wanton, or reckless manner. McGuire v. Lovell (1998),128 Ohio App.3d 473, 481, citing York v. Ohio State Highway Patrol (1991),60 Ohio St.3d 143; R.C. 2744.03(A)(6)(b). "Willful misconduct" is "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." McGuire, *Page 9 128 Ohio App.3d at 482 (citations omitted). "Wanton misconduct" is "the failure to exercise any care whatsoever. * * * [M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor. Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." McGuire, 128 Ohio App.3d at 481
(citations omitted); see, also, Edinger v. Bd. of Allen Cty.Commrs. (1995), 3d Dist. No. 1-94-84, 1995 WL 243438. Additionally, the Supreme Court of Ohio has adopted the Restatement's definition of "recklessness," holding that:
 The actor's conduct is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.
 {¶ 18} Id., quoting Thompson v. McNeill (1990), 53 Ohio St.3d 102,104-105, quoting 2 Restatement of the Law 2d, Torts (1965) 587, Section 500. This Court has also stated that "[t]he issue of wanton misconduct is normally a jury question[,]" Edinger, supra, citing Fabrey v.McDonald (1994), 70 Ohio St.3d 351, 356; however, the standard for showing wanton misconduct is high. Id.
 {¶ 19} Finally, in determining whether a political subdivision employee's conduct in responding to an emergency is willful, wanton, or reckless, "the use of *Page 10 
lights and a siren by [the employee] on an emergency call is a significant factor[;]" however, this factor is not determinative, but is "one factor and is to be considered in conjunction with all the other circumstances[.]" Reynolds v. Oakwood (1987), 38 Ohio App.3d 125, at paragraph two of the syllabus. See, also, McGuire,128 Ohio App.3d at 484. Additionally, courts have found that violation of, or compliance with, municipality guidelines or policies for emergency responders is not determinative, but may be "taken into consideration in determining what a reasonable speed is to protect the safety of all concerned."Hunter v. Columbus (2000), 139 Ohio App.3d 962, 970. See, also,Whitfield v. Dayton (2006), 167 Ohio App.3d 172, 182-183.
 {¶ 20} Courts have found that a political subdivision employee did not act willfully, wantonly, or recklessly, and was immune where a firefighter responded to an emergency call in a vehicle with no emergency lights or siren and, travelling at five m.p.h., turned left without signaling in front of an oncoming vehicle, Pelc v. Hartford FireIns., 5th Dist. No. 2003CA00162, 2003-Ohio-6021; where a police officer responding to an emergency call activated his emergency lights and siren, accelerated and travelled left of center upon entering an intersection, Cunningham v. Akron, 9th Dist. No. 22818, 2006-Ohio-519; and, where a firefighter responding to an emergency call activated his emergency lights and siren, was travelling not more than forty-five m.p.h. in a thirty-five m.p.h. zone, *Page 11 
and immediately applied his brakes in attempt to avoid colliding with a vehicle stopped in his path. Loulis v. Haas (2001), 9th Dist. No. 3142-M, 2001 WL 891114.
 {¶ 21} Conversely, courts have found that a genuine issue of material fact existed as to whether a political subdivision employee acted recklessly where a police officer responding to an emergency call was travelling eighty-four m.p.h. in a thirty-five m.p.h. residential zone up a hill which limited his visibility of an intersection, at which he collided with another vehicle, Carder v. Kettering, 2d Dist. No. 20219,2004-Ohio-4260; where a firefighter responding to an emergency call travelled left of center through a crowded intersection at sixty-one m.p.h. in a thirty-five m.p.h. zone, Hunter, supra; and, where a police officer accelerated before entering an intersection against a red light, activated his emergency lights just prior to entering the intersection, and observed several vehicles enter the intersection without yielding to him prior to entering the intersection. McGuire, supra.
 {¶ 22} Here, Mangas asserts that he pulled over so that Bockelman could safely pass him; that Bockelman was driving too fast for the conditions; and that this presents a genuine issue of material fact as to whether Bockelman was reckless. The only discrepancy between Mangas' and Bockelman's statement of events is whether Mangas pulled over to the curb immediately upon noticing *Page 12 
Bockelman or whether Mangas abruptly stopped. Accordingly, construing the evidence most strongly in Mangas' favor, we will presume that he pulled over to the curb immediately. Additionally, Bockelman's testimony was uncontested that he activated his emergency lights and siren immediately upon responding to the emergency call; that he was traveling not more than twenty-two m.p.h. in a twenty-five m.p.h. zone; that there was one inch of snow on the road; and, that he attempted to avoid the collision by braking and veering into another lane, but slid due to the snowy conditions. Thus, Bockelman was not exceeding the speed limit, let alone the fire department guideline for emergency responders of fifteen m.p.h. above the speed limit, and attempted to avoid the collision. Additionally, Bockelman activated his emergency lights and siren well before he encountered Mangas. Although any one of these facts alone is not determinative, they are significant factors to be considered. SeeHunter, supra; Reynolds, supra. In examining the totality of the circumstances, we find that, while Bockelman's conduct may have constituted simple negligence, his conduct did not create an unreasonable risk of physical harm substantially greater than that necessary to make his conduct negligent. Accordingly, Bockelman did not act willfully, wantonly, or recklessly. Therefore, Bockelman was entitled to immunity under R.C. 2744.03 and the trial court did not err in granting Appellees' motion for summary judgment. *Page 13 
 {¶ 23} Finally, we note that Mangas argues that Appellees inappropriately cited to R.C. 4511.041 in support of Bockelman's immunity. R.C. 4511.041 exempts emergency or public safety vehicles responding to emergency calls from R.C. 4511.21, which requires motorists to travel at a speed not greater than that which will maintain an assured clear distance ahead. However, R.C. 4511.041 is not an immunity statute, but a traffic statute, and "does not relieve the driver of an emergency vehicle or public safety vehicle from the duty to drive with due regard for the safety of all persons and property upon the highways." R.C. 4511.041; Elsass v. Crockett, 9th Dist. No. 22282,2005-Ohio-2142, ¶ 49; Pelc, 2003-Ohio-6021, at ¶ 17. We find that Appellees' reference to R.C. 4511.041 appears to be for the proposition that Bockelman did not violate the assured clear distance ahead statute, as he was exempt, and not for the proposition that the statute made him immune from civil liability. Regardless, Appellees' reference does not affect our disposition.
 {¶ 24} Accordingly, we overrule Mangas' assignment of error.
 {¶ 25} Having found no error prejudicial to the appellant herein, in the particulars assigned and argues, we affirm the judgment of the trial court.
Judgment Affirmed.
 PRESTON and WILLAMOWSKI, J.J., concur.
[1] We note that Appellees have not appealed this decision.
[2] We note that, although Mangas' notice of appeal states that "Plaintiffs' (sic) Estate of Michael M. Mangas Karen Mangas" appeal the trial court's decision, nothing in the record reflects that Mangas has died or that Karen Mangas has been substituted as the appellant. Additionally, the record does not reflect that Karen Mangas has ever been a plaintiff. *Page 1